Case No. 18-7168 I'm-a-Pizza, LLC Appellant v. At Pizza Limited, et al. Mr. Barnard, for the appellant. Mr. Dowd, for the appellant. Thank you, Your Honor. May it please the Court, David Barmack for appellant, I'm-a-Pizza. Your Honor, is the District Court erred by not accepting as true I'm-a-Pizza's well-pleaded allegations, resolving factual disputes, and granting At Pizza's motion to dismiss. It then compounded that error by dismissing the complaint without leave to amend and without explaining its reasons for doing so. The import of the District Court's ruling is that an American company has no recourse to our courts to address violations of American copyright law, which occurred here, and of the Lanham Act by foreign actors who came to America, numerous visits here in this country, to steal I'm-a-Pizza's intellectual property for their use abroad. Where's the motion to amend that was denied? There was no motion to amend, Your Honor. There was simply a reference in the memorandum in opposition to the motion to dismiss. You know that under local rules that doesn't suffice. That is correct, Your Honor. However, under Bellazan, which if memory serves, Your Honor, wrote, even in that circumstance where the Court as here elects to dismiss with prejudice, it has to explain its reasons for doing so. And that's different than your claim that you were denied a motion to amend. Are you abandoning that? I think that's incorrect, yes, Your Honor. I think that the focus of that, and I would point out that even in our opening brief at page 16, we do refer to Firestone and to the principle that when denying with prejudice, the court, the District Court has to explicate its reasons for doing so, which it did not do here. Importantly here, AppPizza and its principles came here repeatedly beginning in July of 2015, scouted IMApizza stores and our unique attributes, downloaded and photographed copyrighted images here. That's what's alleged. Yes. Thank you, Your Honor. There were several things that are alleged in the complaint. One is photograph, photographs of the stores, which themselves have copyrighted elements, and in addition, we allege that they downloaded copyrighted photographs. These are public stores, right? They are public stores. So what's copyrighted there? We have copyrights as to architectural elements of those stores and those were photographed. In addition, they photographed, they downloaded, I'm sorry, copyrighted photographs. But these are displayed to the public, right? Yes, they are. But reproducing, as they did copying, an architectural element which is itself copyrighted is an infringement. But where did that occur? Didn't that occur in solid? No, no, Your Honor. Both things occurred here. The downloads occurred here because they were downloading from U.S. servers, as we've alleged. And in the Liberty Media case, for example, that we've cited. Doesn't the copy, I'm just looking at the statute. It says. Yes. The median of expression, when it's embodied in a copy, is sufficiently permanent or stable. When did that, that doesn't sound like a download. Well, it's clear numerous cases have recognized that downloads of copyrighted elements are themselves infringement. Liberty Media being one. But we know the Copyright Act is not, it doesn't extend beyond the borders of the United States. So the question is where did that occur? Were they sitting in Scotland downloading from the website? We alleged that it occurred here. The district court said that it presumed that they were sitting in Scotland. But that's why we have trials, Your Honor. We allege in the complaint that their activities occurred here and that they copyrighted from download servers. They came here on numerous occasions. As we know, they came here at least twice. Mr. Lyle came here at least twice in July of 2015. By October 2015, as you can see from Joint Appendix Page 83, he incorporated his company using at that time our precise name. And, with an ampersand, and pizza. He later changed it to at pizza to try to differentiate it, presumably. But we know that he did that. And he did that after, just within a few months of coming here. We know that while he was here, we allege in the complaint that while they were here, they downloaded copyrighted images. That, in addition, they took photographs of copyrighted elements while visiting our stores. And then, yes, they went to Scotland and then replicated our stores. But under the cases, in terms of extraterritoriality for the Copyright Act, all we need to allege and to show is a single act of infringement here. And we have alleged that. Mr. Barnett, did you say you alleged in the complaint that the download occurred in the U.S.? We allege, no, Your Honor, that the servers were in the United States. Well, but that's the question. I understand you. Obviously, their servers are in the United States. But where did the download occur? Do you allege that that was in the United States? No, we allege in paragraphs 39 through 41 just that they were downloaded from servers here. We do not specifically allege that they were sitting at laptops or at other computers. Isn't that kind of fatal to your argument? I don't think so, Your Honor. Why not? Because under various cases, we cite them in the brief. Liberty Media is one. Elsevier is another one. The location of the servers is important to know where the copyright infringement occurs. Under Liberty Media, the download occurred in the United States, and that was an infringement from servers in the United States. And that was, therefore, an infringement in the U.S. law. But you don't allege that the download occurred in the United States. No. Liberty Media. Right? Oh, I'm sorry. Isn't that right? Correct. Yes, but we allege that the servers were in the U.S., and that's what Liberty Media focuses on. Similarly, the Elsevier case specifically declined a motion to dismiss so that there could be discovery and proof as to where the downloads occurred, both in the sense of where the servers were and as to where the individual defendants were when they made the downloads. Mr. Barnett, you cited Liberty Media in some other cases as well that are decided by district courts and other circuits as though they were authority. I mean, it's like going to the Supreme Court and saying that they've got to do something because the circuit courts did it. I understand, Your Honor. And it's distinctly unpersuasive. I mean, it's almost distracting. I understand, Your Honor. Unfortunately, we don't have a case we can cite from this court or from another circuit. Or any circuit, right. So there's no circuit authority that they doubt that a server being in the U.S. satisfies your theory of infringement if the download occurs outside the U.S. Correct. I would note that this court's opinion in Spansky involved a server that was overseas, but the viewing of the video occurred here in the U.S. And under that section of the Copyright Act, which isn't really in play here, but under that section of the Copyright Act, the question is where did the performance occur? Do you think Spansky helped you? I think Spansky helps us, yes, Your Honor. No. I mean, in Spansky, the viewing occurred in the United States. Yes. But here, there's no allegation other than your allegation about the server that the download occurred in the United States. That's correct, but they're different sections of the Copyright Act. Then why are you citing Spansky? Then why does it help you at all? Because Spansky is important for the proposition that all you need is a single act of infringement that occurs in the United States. Okay, but so where's that allegation? That's what Judge Ginsburg and I are both asking you. Other than, I gather it's that the server was here, right? I'm sorry, Your Honor? That the server was in the United States, right? Yes. With respect to the copyrighted photographs that were copied, that allegation is that the server is in the U.S. We also, however, have alleged that while visiting our stores, they took photographs of copyrighted elements of our stores, and that, too, is a violation of the Copyright Act. And that's at paragraph 25, for example, took extensive pictures of copyrighted information while at the restaurants in the District of Columbia, at paragraph 25 of our complaint, which is at Joint Appendix page 17. I want to ask you a Lanhamac question. The briefs debate what the proper standard is for impact on commerce in the United States. Suppose we take the least demanding standard, the one from the Ninth Circuit, which says some impact. That's it, okay? Yes. Can you explain to me how a pizza restaurant in Scotland can have some impact on a pizza restaurant in Washington? I think it's not really hard to imagine, I would submit, Your Honor, in this way. It's a globalized world. We allege that there are numerous U.S. visitors to Edinburgh where they opened their first restaurant. They've subsequently opened a second one. That those customers could be. Are you suggesting that those people left the United States to get ant pizza instead of ant pizza? No, no, no. No, of course not, Your Honor. I don't think their trip was for that purpose. Okay, so I don't understand. I mean, I saw your allegations. You say that there are a lot of American tourists in Scotland, and they spend a lot of money on food. But that doesn't tell me why it has some impact on ant pizza in this country. Because if they visit their restaurant and are confused by their restaurant as being one of ours, that can impact both our ability to expand in Europe, which we allege we plan to do. So where's the allegation about confusion in your complaint? The allegation on confusion is in the Lanham Act count, and we specifically allege, for example, that a business partner was confused. That was a business partner of ours. That was a potential business partner of ant pizza, not ant pizza. No, that was a business partner of ant pizza, is the allegation, who was confused and surprised to see ant pizza. My red light is on, Your Honor. Hold on a moment, please. Okay. So the district court at one point raised the concern that if your allegations, the ones we've been discussing, are sufficient. This is on the copy right. Well, actually, on both. Then if that states a claim under the Lanham Act, then the U.S. law, that law, would be applicable, quote, anywhere in the world that American tourists visit in significant numbers. Correct? Close quote. Is that not correct on the part of the district court? I believe that is what the district court said. No, no. Is it not correct? Is the judge not correct in saying that? I don't think so. I don't think the judge is correct, because I think, in fact, we're required to prove that there is an effect on commerce. And if we were to go forward and have discovery, we either would prove that there's an effect on U.S. commerce, or we wouldn't. There certainly are situations. But you could state a claim with respect to anywhere a party in a similar position could state a claim with respect to any location in which there are numerous American tourists. Yeah, but we have more than that, Your Honor, because we have the earlier acts of numerous visits to the United States. We have a situation where we know that after visiting, they started, they took our trademark, they used that as the name of their company there. So, respectfully, our situation is not merely that we're alleging that, oh, they opened a restaurant there and it can impact us. We do have numerous acts, specific acts, that occurred here in the United States. The Lanham Act, why is that relevant? Confusion is the question, isn't it? The question of the Lanham Act is whether there's an effect on U.S. commerce. And confusion, I thought, was your theory of effect. Correct. And unfair competition. There were two Lanham Act counts, including unfair competition. Is there no point at which this becomes too speculative to support a claim? I think there is a point. I don't think our case reflects that point. And that's because we have the very specific situations, much more similar to the true engineering case in the Fourth Circuit, where they came here, they effectively, as they did in true engineering, as the defendants did in true engineering, took our blueprint, if you will, by copying our stores, looking at our stores, scoping them out. In that case, they had both Lanham Act and Copyright Act claims. They went to the jury. The jury came back with a copyright finding for the plaintiffs in that case, and the Lanham Act was thrown out on appeal. That's where we are in this case. This case should go forward and give us the ability to prove, as we believe we can, and we certainly have the allegations supporting it, that there were copyright infringements here in the U.S. It's not wholly extraterritorial, and that there is an impact on U.S. commerce. And may I presume? That there is some impact. You're not claiming it's a substantial impact. There is at least some impact, yes, Your Honor. And lastly, the passing off claim. Have you litigated that in the U.K.? No, we have not, Your Honor. And the passing off claim, I would say, lives or dies on whether this gets reversed. The court ruled below, and we have not challenged the ruling below, that there is not diversity. We did not establish diversity of citizenship. So the ability to pursue the passing off claim below depends upon supplemental jurisdiction, if the other claims, the federal question claims, are up. I'm sorry, did I miss something? Why can't it be pursued in the U.K.? I didn't say they couldn't be pursued in the U.K., but I'm explaining why they could be pursued here if the case is reversed. I'd like to reserve the balance of my time. Thank you. Thank you. All right. Good afternoon, Your Honors. Matthew Dowd for the appellees. What I'd like to do with my time, I'd like to respond to the points that were raised in the opening argument. By the way, just a quick question. If you were in the United States, you'd lose this case, right? We would lose the case at the motion to dismiss stage with respect to the copyright claim and the land enactment. Correct, Your Honor. So this all turns on the question of the domestic, the foreign impact of the two statutes, correct? For purposes of this appeal, correct, Judge. All right, great. And that's been the thrust of our position the entire time. This dispute started in the U.K. when appellants counsel, the U.K. counsel, sent a letter to our client's U.K. counsel raising these issues. We've said all along that it belongs in the U.K., and that's what we've disputed at the district court. But if I may turn to some specific points. Judge Ginsburg, you asked about the passing off claim. It can certainly be pursued in the U.K. But our position is that that claim itself is frivolous because under U.K. law, they require goodwill. And to have goodwill under U.K. law, you have to have some commerce or business in the U.K. And it's undisputed based on the pleadings that there are in there that the U.K. So, you know, why they haven't pursued that is speculation, but that's a substance of that claim. In terms of the tire engineering case, which my colleague mentioned, the critical point in that case with respect to the Lanham Act claim, although it was cited primarily for the copyright claims in our briefs, is that the Fourth Circuit dismissed the Lanham Act claim for failure to state a claim for many reasons that are similar here. You had entirely foreign actors. The company that was located in Asia that stole the underlying trade secrets about the design tires had no business in the United States and it had no effect on U.S. commerce. And so, if anything, that case supports our position. Another, I think, issue about the Lanham Act claim, Your Honors, is that as I understand the complaint, part of their position, perhaps with the unfair competition claim, is that our clients conducted some sort of conspiracy or conducted some sort of predicate acts that led to conduct that may have affected U.S. commerce. And that last part, again, we believe is speculative, but that whole predicate theory that there was some conduct in the U.S. has been rejected by courts time and again. And there's a Second Circuit case in, I believe, the 70s. It's the Robert Stigwood Group, and it dealt with a Canadian performance of the Broadway smash hit, Jesus Christ Superstar. And in that case, the court entirely rejected the appellant's theory in that the fact that the performance group did certain preparations and did certain conduct in the United States, and then went to Canada to perform the infringing act under trademark law, all of that conduct in the United States was non-infringing and, therefore, could not be a basis to extend the Lanham Act to conduct that was occurring entirely overseas. Judge Tatel. That was at your service, the trademark? Yes, that's a trademark case. Judge Tatel, one point in response to one of your questions, you asked about the alleged business partner who was allegedly confused. Yeah. That was, in fact, a potential partner of App Pizza, at least alleged. We don't know who it is, but according to the complaint, and that's in paragraph 22 of the complaint. That's what I thought. Let me turn to a few of the copyright cases. And I think fundamentally, we make this point in our brief, but fundamentally what distinguishes this case from every case that the appellants cite in their brief is that in every case that they cite, it's all unauthorized downloads and the fact that it's basically unauthorized copies that were available on the Internet. So, for example, my colleague mentioned Liberty Media. The fundamental dispute there was that they were actually unauthorized copies of pornography films that were available on the Internet. And so it didn't matter where they were uploaded or downloaded. Just the fact that they were reproduced without authorization of the copyright holder is, by itself, a copyright violation. Elsevier is actually an interesting case. It's out of the District of Massachusetts. And when you read that case carefully, we didn't cite it for this proposition because we distinguished it, but if you look at the reasoning from this District Court to the extent that you find it persuasive, it actually cuts against the appellant's argument because in that case, what was at issue were two pharmaceutical texts that were copyrighted. They were uploaded on some service someplace in the world. The person who uploaded them was in India. And there was a question of whether someone in the United States, when they downloaded those unauthorized copies of the textbooks, would have been copyright infringement. And in that case, the copyright holder, they hired an investigator out of Massachusetts, downloaded these copies, went to the court and said, see, look, we have access to them. Therefore, there's an unauthorized download in the United States and, therefore, copyright infringement. For one reason or another, the District Court rejected that argument. I don't think it's correct under the copyright law, and I don't think it's correct under this circuit's law in the fact that if you have an unauthorized version on the Internet and somebody within this district or within the United States downloads that version, that's an unauthorized reproduction because, fundamentally, the version that's available online is in itself unauthorized. Judge Tatel, you offered the Spansky decision for the court. We completely agree with you that that decision offers no support for the court. And then I think, ultimately, as you noted, Judge Tatel, the appellant's concession here today that what they're relying on is only the theory that if someone can access information anywhere in the world and it happens to be on a U.S. server, then U.S. copyright law extends to that conduct. And I know of no case that stands for that proposition. The appellants have cited no case that stands for the proposition. And, in fact, I think it's contrary to the most, if not all, of the case law of all the circuits. And let me get to one thing that I will say I think is really what Judge Kelly was getting at when you read the complaint. And my colleague acknowledged today that they're not alleging that the download actually occurred in the United States when my clients, my individual clients, were visiting the United States, as alleged. What they're alleging is only the fact that the download came from the server. Now, I want to add another gloss to that. And I think this is what Judge Kelly was getting at. And we support this interpretation of the complaint because it's really the only feasible, reasonable interpretation of the complaint. When you look at the complaint's paragraphs that talk about the alleged conduct that happened in the United States, the appellant slash plaintiff is very specific. So, for example, paragraph 17 of the complaint, set JA-14, that talks about Mr. Lyle's first visit to the United States. Paragraph 25, paragraphs 24 and 25 read together, and they talk about the subsequent visit to the United States. And those are talking about the visits to the pizza stores themselves and the photography that took place. Nowhere in those paragraphs is there any mention of the individuals actually downloading. Now, it's not until you get to paragraphs 38 and 39 within the section of the complaint that talks about the actual copyright claim. And in 38 and 39, they're very specific to demarcate the difference between the photography that happened in the United States versus the downloading. And when you read that allegation in context, particularly when you know the defendants, all three defendants are domiciled in the United Kingdom, the only reasonable inference is that that downloading occurred in the United Kingdom. Now, on top of that, I would also add that the fact that they have to specify or that they did specify in their complaint that the servers were in the United States underscores the fact that they know that the downloading didn't occur in the United States because that was their hook to try to get U.S. jurisdiction under the copyright claim. So you're saying if the downloading occurred in the United States, it wouldn't matter where the server was? Correct. That's the answer? Correct. Yes. Yes, because if the downloading occurred and if it was unauthorized, right, then the fact that that downloading occurred in the United States would be, if it's unauthorized, an unauthorized reproduction and therefore a violation of the copyright owner's rights under 106 section, 106.1, right? Now, I would also add. Excuse me just one second. Sorry. Isn't it clear that the phone claims that the photograph would be infringing? The photograph? The photograph was infringing and so it completed the matter. The infringement had it downloaded in the U.S. Well, I think that's a different. I think that's a question that's at best unsettled and we would say that as a matter of law, it is either not infringing because it's authorized by the way the Internet works or at a minimum, it's either de minimis infringement or fair use, right? We're talking about the photograph of the store. Photograph of the store. Outside and inside. I'm sorry, Your Honor? I think outside and inside. Are you talking about the photographs that our individuals took or the ones that they downloaded from the Internet? Because the complaint's not really clear about that. They're different? Yeah. That's the way I understand it. And I think this is part of. Their implication is they're talking about the photograph of the architectural distinctions and that type of thing. No. I hear that's not talking about a tourist standing in front of a store. They're talking about a photograph that has something unique to it. Judge Rogers, I think you're right, but the way I read both their brief and their one was the actual taking of photography that then led to the construction of an infringing restaurant in the U.K. based on the architectural design. And that has zero case law support. And, in fact, the only case they cite, builders neutral, they quote a sentence that stands for the exact opposite of the holding of the case. So I don't put any credence in that. But what I was really focused on is the photographs that they alleged to be available on the publicly available websites, so just the Internet. So everyone's browsing, click on a site, the information gets downloaded to a computer, oftentimes it's saved in the cache. What I was going to say is that I think if we step back a little bit in time, like pre-Internet days, this is basically, whether it's a magazine or whether the appellates themselves are putting this freely available on the Internet, it's no different than someone handing out free literature and it has a photograph and that photograph has a copyright protection on it. Now, if the appellant were to give that to me, that handout, that hard copy, I own that hard copy. I have the right to destroy it. I have the right to keep it. And, in fact, as a child, I would have had the right to clip out the photograph and, you know, use it as, I don't know, like a scrapbook. As long as I didn't violate the other rights associated with the copyright, such as the right of reproduction and the right of public display and so forth. And what the appellants, as I understand they're trying to do, is they're trying to take, you know, this was earlier before they conceded that the download didn't occur in the United States, but, you know, going back to what I thought was their earlier argument, that if the download did occur in the United States, right, then their theory is just that browsing of the Internet and saving a publicly available web page is that, that by itself is an infringement and that is an infringement sufficient enough to extend copyright, U.S. copyright law to the subsequent activity that occurred in the U.K. Again, we're not aware of any case law that holds that. We're, in fact, aware of, there's a Second Circuit case from 1982 called Knickerbocker Toys, and it's almost directly on point. Again, it's a pre-Internet case, right? But in that case, there was an instance, Knickerbocker Toys created these, I remember them as a kid, they're called wrist racers, little toys that went on your hand, you shot off a car, and one was a Chevrolet Corvette. And a competing company came along, created a very similar product. Ultimately, the court said there was no Latinx violation, but in that dispute, there was an instance where the defendant just happened to use a photograph of one of the plaintiff's copyright owner's cars in a mock-up internally. There was no further reproduction. There was no further display. No one else saw it, and it was completely internal, and the Second Circuit in that case held that that was clearly de minimis infringement and therefore no copyright liability. Now, of course, we're not even that far, because today the Appellant's Counsel concedes that there is no downloading that occurred in the United States. And as I explained earlier, I think the only reasonable way to read the allegations in the complaint is that that activity, when it's not specified in the United States, actually occurred in the United Kingdom. Now, that brings us, if I may, I know I'm past my time, Your Honors, but Judge Ginsburg, I'd like to bring us back to one of your first questions to my opposing counsel, is this whole issue about the dismissal with prejudice versus the dismissal versus leave to amend. Now, when we received the opening brief, in their two-page section, in the first section of their argument, the only issue that they raised was leave to amend. And when you read this court's case law, when you look at Balazon, when you look at Rollins, and all three judges on the panel today have been on these cases and authored some of them, it's clear that those two issues are distinct, whether it's leave to amend versus whether it's dismissal with prejudice, right? So when we responded to the opening brief, and this gets to the – I would like to take a moment to explain why we filed our motion sanction. It was clear from this circuit's case law that they had no basis to challenge the so-called lack of leave to amend because they never asked the district court for leave to amend, right? In Rollins and in Balazon, they clearly addressed the issue separately. Those are distinct issues. And we never saw their opening brief as a challenge to the dismissal of prejudice. When we filed the motion – sanctions motion, they responded and they said, no, no, our position now is that we're not dismissing leave to amend. We're not dismissing the other issues. We're dismissing – we're challenging the issue of dismissal with prejudice. Now, in our motion, we actually cited cases like City of Harper Woods, for example. We cited the Martin Baker aircraft case, which you authored for the court, Judge Tatel, where they expressly say that if you don't raise the request for leave to amend under either Rule 15 or Rule 59, you forfeit the right to appeal it. And then that was in our opening motion. And, again, the appellants never responded to that case law. In fact, we cited the pin sites that directed them. All right, so you're saying that the issue of leave to amend was forfeited in the proceedings below, and the issue of prejudice was forfeited because it wasn't raised in the blue brief. Well, the dismissal with prejudice is forfeited for two reasons, Your Honor. Well, is that one of them? Yes. No. One is that it wasn't raised in the blue brief. That's our reading of it. But even if you're generous in terms of how you read their two-page section in their opening brief, is that this Court's case law under City of Harper Woods, Drake v. FAA, there's a long list of them. It's clear that if you don't request leave either under Rule 15 or you file a Rule 59 e-motion after the judgment, and then part of that you request the leave to amend, then you forfeit the right to challenge the dismissal with prejudice. And that's what happened here. And the case law is clear on that. And I will add one last point, is that, you know, when we've dealt with this case, right, we've explained to them all along, hey, this is a case that should be in the United Kingdom. We don't dispute that ultimately this could be a dispute about trademark rights and those trademark rights in the United Kingdom. But what happened here is that we explained to the District Court that this case belongs in the UK. Judge Kelly dismissed the main four claims, right, the copyright claim, the two Lanham Act claims, and the trespass claim, which we haven't talked about, which we think, again, has no support in the case law. And then that was on September 24th. The appellants had four weeks from that decision until Judge Kelly's dismissal of the case order on October 23rd. Any time between then, they could have raised the issue of, hey, maybe we could supplement this complaint. And, in fact, I think, you know, this is all underscored by the fact that now the appellant is here complaining that, well, Judge Kelly made all these so-called suggestions in the opinion on how the appellant could cure its complaint, its deficient complaint, putting aside the speculative nature of most of the allegations. But all of this is all the more reason why the case law of this circuit in the city of Harper Woods and Drake v. FAA, where it's incumbent upon a party, if they want to seek leave to amend, they have to either do it through Rule 15 or Rule 59. They can't ask this Court for the first time on appeal to reconsider so-called specific allegations. And, Your Honor, I know I'm way past my time, unless there are any further questions. Thank you, Your Honor. I ask the Court to affirm. Thank you, counsel, for appellant. Let's give you a minute or two. Thank you. This feels a bit like alternate reality. This is not a case where these folks sat in Scotland on their computer, looked at a few things, and went and built their business. This is a case where they regularly, on numerous occasions, came to the United States for the purpose of stealing our businesses' look and feel and unique attributes. So much so that the dis- What cause of action does that inform?  It informs the concerns around extraterritoriality for the Copyright Act, because acts of infringement, as I said, occurred here, and the Lanham Act. And so their activities here were so much that the Court found that there was personal jurisdiction over them, because they came here to transact business. It was a business of stealing our business. And that makes it very much like the Fourth Circuit decision in Tire Engineering. And I ask the Court to look at the cases in this area, the Tire Engineering case and the Second Ninth, Sixth, and Federal Circuit decisions in this area, and they don't require very much for the Copyright Act to apply. In Tire Engineering, foreign actors came here, met with somebody, got the blue- converted, the Fourth Circuit said, converted a copy of the Tire blueprints, and took that back overseas to manufacture their infringing tires. And that's all that was required. Did the Court ever make a final conclusion on personal jurisdiction? In this case? Yes. Yes, said that there was personal jurisdiction, Your Honor. And this case is very similar in the sense that these individuals came here and scoped out our business, copied, took photographs of our business, took that information home to Scotland to create a very similar, nearly identical business over there. Respectfully suggest that that is enough under the precedence in all the other circuits to extend Copyright Act liability, certainly to get past the pleading stage and allow discovery and allow the case to go forward. Importantly, in the Fourth Circuit case, ultimately the jury was given an instruction about extraterritoriality and whether there were sufficient acts here in the United States to justify application of the Copyright Act. And they said there was. And that was sustained by the Fourth Circuit. That's what should happen here. All right. I think we have your argument. Thank you. And we'll take the case under advisement.
judges: Rogers, Tatel, Ginsburg